```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
BAYIT CARE CORP.,

            Plaintiff                MEMORANDUM AND DECISION
                                         11-CV-3929(DRH)
    -against-

TENDER LOVING CARE HEALTH CARE
SERVICES OF NASSAU SUFFOLK,
LLC, Successor in Interest to
STAFF BUILDERS INTERNATIONAL,
LLC,

            Defendant.
----------------------------X
```

A P P E A R A N C E S:

For Plaintiff:
    Einbinder & Dunn
    104 West 40th Street
    New York, New York 11556
      By: Michael Einbinder, Esq.

For Defendant:
    Farrell Fritz
    1320 RXR Plaza
    Uniondale, New York 11556
      By: James M. Wicks, Esq.
         Aaron E. Zerykier, Esq.

HURLEY, District Judge

      By Order to Show Cause filed on March 8, 2012, Bayit Care Corp. ("plaintiff" or "Bayit") seeks the following items of injunctive relief against Tender Loving Care Health Care Services of Nassau Suffolk, LLC ("defendant" or "Tender Loving"):

      (1) [an order p]reliminarily enjoin[ing]
      Tender Loving during the pendency of this
      action from deeming as ineffective Bayit's
      extension of the franchise relationship for
      an additional five years, commencing on April
      1, 2012,

      (2) [an order p]reliminarily enjoin[ing]

> Tender Loving during the pendency of this
> action from deeming the franchise
> relationship as expired on April 1, 2012, and
>
> (3) [an order p]reliminarily enjoin[ing]
> Tender Loving during the pendency of this
> action from discontinuing its performance
> under the Franchise Agreement based on the
> position that the term of the franchise
> agreement will expire on April 1, 2012.

Mar. 8, 2008 O/T/S/C at 2.

Plaintiff's application for a preliminary injunction was returnable before me on March 26, 2012. At that time, oral argument was had on plaintiff's request as to that application, as well as its concomitant request that a "temporary restraining order be put in place pending [my] decision [on the preliminary injunction matter]." Mar. 26, 2012 Tr. Mot. Hr'g ("Tr.") at 35.

Consistent with plaintiff's request, and given (1) that the standard for the issuance of a temporary restraining order and for a preliminary injunction are the same in this Circuit, <u>Andino v. Fischer</u>, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008), and (2) that a perusal of the unambiguous, relevant franchise agreement provisions indicates that no evidence beyond the four corners of those provisions is required to decide the instant motion, the Court in this Memorandum and Order will provide its decision regarding both items of injunctive relief sought in the Order to Show Cause.

BACKGROUND

1. <u>Relationship Between Bayit and Tender Loving</u>

The relationship between Bayit and Tender Loving is well snyopized by defendant thusly:

> Tender Loving is a subsidiary of Amedisys, Inc. ("Amedisys") a national provider of home health and hospice care . . . . Tender Loving is the local [Amedisys] subsidiary which franchises the Nassau and Suffolk County, New York operations to Bayit. In 1992 Bayit entered into a Franchise Agreement (the "1992 Franchise Agreement") with Amedisys's predecessor in interest Staff Builders International, Inc. ("Staff Builders"). In 2005 Amedisys acquired Staff Builders and all of its subsidiaries, including Tender Loving.

Def.'s Mem. in Opp'n at 1.

2. <u>The 1992 Franchise Agreement</u>

Under the 1992 Franchise Agreement between Staff Builders, a predecessor in interest to Tender Loving, and Bayit, Bayit was granted a franchise "to operate [a] Staff Builders Health Care Center [in a defined territory] . . . utilizing Franchisor's Propriety Marks and Health Care System." <u>See</u> 1992 Franchise Agreement at 2 (attached as Ex. A to Mar. 8, 2012 O/T/S/C.) The "Initial Term" under the 1992 Franchise Agreement was for "ten (10) years," i.e. until 2002, <u>id.</u>, § 3.01 at 4, with Bayit having the option, under § 3.02, to extend the initial term by "enter[ing] into a renewal Franchise Agreement for an additional five (5) year term (the 'Renewal Term')." <u>Id.</u>, § 3.02

at 4. Section 3.03 provided, however, that Bayit's "right to enter into a renewal Franchise Agreement [under § 3.02, was] contingent upon [its] fulfillment" of a number of conditions precedent including "hav[ing] fully performed all of its obligations under the Agreement." Id., § 3.03 at 4-5.

Paragraph 3.04 of the 1992 Agreement, entitled "Form and Manner of Renewal," reads in pertinent part:

> If Franchisee wishes to exercise its right to enter into a renewal Franchise Agreement, it shall do so by executing Franchisor's then-current form of Franchise Agreement, which agreement shall supersede this Agreement and be modified to provide that Franchisee shall have no right to renew the franchise upon expiration of the Renewal Term. If upon the expiration of the Renewal Term, the Franchisee wishes to continue to operate the Franchised Business for an additional term (the "Additional Term"),[1] then, subject to Franchisor's absolute discretion, and in the manner prescribed by Franchisor, Franchisee may be permitted to enter into Franchisor's then-current form of Franchise Agreement, provided that, at a minimum, Franchisee shall have fulfilled the conditions set forth in Paragraph 3.03 (a)-(h) hereof.
>
> The terms of the Renewal Agreement may differ from the terms of this Agreement, except that: (i) the boundaries of the Territory conferred upon Franchisee hereunder shall remain the same; [and] (ii) <u>the right</u>

---

[1] There is no claim that plaintiff's efforts to exercise its option under paragraph 1 of the 2002 agreement for an additional 5 years constitute an "Additional Term." Tr. at 15 (Mr. Einbinder stating that "it is not an additional term. There is a thing called an additional term which was only at their discretion. So we are not [talking about] an additional term.")

-4-

<u>to renew the Renewal Agreement</u> and any applicable Renewal Management Agreement(s) <u>at the expiration of the Renewal Term shall be identical to that set forth herein</u>.

. . . .

Franchisee shall exercise its right to renew for a Renewal Term in the following manner:

(a) <u>Not less than one hundred eighty (180) days</u> but not more than two hundred forty (240) days <u>prior to the expiration of the Initial Term</u> (<u>or the Renewal Term</u>), <u>Franchisee shall, by written notice</u>, <u>inform Franchisor of his intention to exercise its renewal right</u>. . . .

(b) Within sixty (60) days after receipt of Franchisee's request, if Franchisee has complied with all conditions precedent to renewal set forth above, Franchisor shall deliver to Franchisee a copy of its then-current Offering Circular (including its then-current form of Franchise Agreement), and within fifteen (15) business days from the receipt of same Franchisee shall, in writing, acknowledge the receipt thereof.

(c) No sooner than ten (10) business days but no more then twenty (20) business days after Franchisee receives the then-current Offering Circular (including the then-current Franchise Agreement), Franchisee shall, by written notice, notify Franchisor as to whether or not he elects to execute Franchisor's then-current form of Franchise Agreement.

(d) Promptly upon receipt of Franchisee's notice of its election to execute Franchisor's then-current Franchise Agreement, Franchisor shall deliver to Franchisee three (3) copies of said agreement.  Within fifteen (15) business days of receipt thereof Franchisee shall execute three (3) copies of said agreement and return same to Franchisor.

>     (e) If Franchisee shall fail to perform
> any of the acts or fail to deliver any of the
> notices required pursuant to the provisions
> of subsections (a), (b), (c) or (d) of this
> Paragraph 3.04 in a timely fashion, such
> failure shall be deemed an election by
> Franchisee not to renew, and such failure
> shall cause Franchisee's renewal right to
> expire without further notice or action by
> Franchisor.
>
>     (f) If Franchisee exercises its renewal
> right in the manner described above, and if
> on the date the Initial Term (or a Renewal
> term) expires Franchisee has complied with
> all of the conditions set forth in Paragraph
> 3.03 hereof, Franchisor shall execute the
> renewal Franchise Agreement previously
> executed by Franchisee and shall, promptly
> after expiration of the Initial or Renewal
> term, deliver one (1) fully executed copy of
> the renewal Franchise Agreement to
> Franchisee.

Id., § 3.04 at 6-7 (emphases added).

It warrants mention that Section 3.02(a)'s 180 day prior notice provision pertains not only to efforts to extend the initial 10 year franchise term, but also to an extension of a "the Renewal Term." That provision demonstrates that the parties envisioned as far back as 1992 that if Bayit exercised the additional five year option set forth in § 3.02 by extending the franchise agreement until 2007, that extension, in turn, might be extended further as a result of a later agreement between the parties. Significantly, the parties provided in § 3.04(a) that should that latter scenario subsequently materialize (as plaintiff maintains it did), the 180 day minimum prior notice

provision would be fully applicable to such an extension.

3. <u>Renewal Franchise Agreement Effective April 1, 2002</u>

Presumably on or before March 31, 2002, i.e. when the ten year term under the 1992 Franchise Agreement had just about run its course, the Franchisor and Bayit entered into a "Renewal Franchise Agreement . . . effective as of April 1, 2002." See 2002 Renewal Franchise Agreement between Staff Builders and Bayit at 1 (attached as Ex. C to Mar. 8, 2012 O/T/S/C.) Under the 2002 Agreement, the Franchisor and Bayit agreed in pertinent part:

> 1. Franchisor hereby grants to Franchisee a Renewal Franchise Agreement for additional consecutive terms of ten (10) years, commencing April 1, 2002, and at the election of Franchisee, an option to renew for an additional consecutive term of five (5) years.
>
> 2. <u>Except as provided herein, the Franchise Agreement and all provisions contained therein shall remain in full force and effect</u>.

<u>Id.</u> at the third unnumbered page of the Agreement (emphasis added).

4. <u>Bayit Notified Tender Loving of its Intention to Renew the Franchise Agreement by Letter Dated January 10, 2012</u>

Bayit advised Tender Loving in its January 10, 2012 letter that "we hereby exercise our option to renew our franchise agreement for an additional five year term pursuant to Paragraph 1 of the Renewal Franchise Agreement made effective as of April 1, 2002." Dolan Decl. in Opp'n, Ex. C; <u>see also</u> Tr. at 5 (Mr. Einbinder indicates to the Court that "[t]here is no dispute that my client exercised that option on January 10."). As noted by

Thomas J. Dolan in his Declaration submitted in opposition to the relief requested, that notice was sent "over three months . . . beyond the exercise date [provided in § 3.04 of the 1992 Franchise Agreement]." Dolan Decl. in Opp'n, ¶ 10.

### Question Presented

Do the notice provisions set forth in § 3.04(a) of the 1992 Franchise Agreement pertain to the April 2002 "Renewal Franchise Agreement"; more particularly, to Bayit's effort to exercise the five year extension of the Franchise Agreement which otherwise would have expired by its terms, see § 3.04(e), on March 31, 2012. A related question concerns whether the April 2002 agreement is ambiguous as to the notice issue, thus rendering extrinsic evidence admissible in an effort to resolve the purported ambiguity.

### Standard for Issuance of a Temporary Restraining Order and/or a Preliminary Injunction

As noted earlier, "[i]t is well established that in this Circuit the standard for entry of a TRO is the same as for a preliminary injunction." Andino, 555 F. Supp. 2d at 419; see also Pl.'s Mem. in Supp. at 10 ("[t]he standard for obtaining a TRO or a preliminary injunction is the same."). To meet that shared standard the movant must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and

a balance of hardships tipping decidedly in the movant's favor." Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96 (2d Cir. 2002)(internal citations and quotation marks deleted.)

There is, as defendant correctly notes, a "heightened standard . . . [if] the injunction [sought] is mandatary in nature." See Def.'s Mem. in Opp'n at 7 (citing Pankos Diner Corp. v. Nassau Cnty. Legislature, 321 F. Supp. 2d 520, 523 (E.D.N.Y. 2003)). In those instances in which injunction sought, if granted, would "alter the status quo by commanding some positive act . . . a more rigorous showing of a clear or substantial likelihood of success on the merits" is required. Id. at 8 (citing Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F. 3d 144, 150 (2d Cir. 1999)). During oral argument, there was considerable discussion as to which standard should apply, i.e. the one articulated in Merkos or the elevated standard enunciated in such cases as Pankos Diner Corp. Perhaps needless to say, defendant urges that the heightened standard is applicable, while plaintiff takes the contrary view, although each side was of the opinion that it would prevail under either measure.

Plaintiff maintains that the lower standard should be applied because Bayit had appropriately exercised its option to extend the Franchise Agreement for another five years and,

-10-

accordingly, an injunction would maintain, rather than disrupt the status quo. Defendant, on the other hand, contends that plaintiff's efforts to exercise the option were not forthcoming in a timely fashion; as a result, issuing the requested relief would alter the status quo by resurrecting what is about to become a defunct franchise arrangement between the parties. The Court need not determine which party has the better side of the argument because, even under the lesser injunction standard, plaintiff has failed to establish that it is entitled to injunctive relief.

Before moving on to the next portion of this opinion, which summarizes the arguments on the merits being advanced by the parties, it is worthwhile to note that plaintiff has established that, unless injunctive relief is granted, its present business would essentially cease to exist, thereby satisfying the irreparable injury prong of the Merkos analysis. See RxUSA Wholesale, Inc. v. Dep't of Health & Human Servs., 467 F. Supp. 2d 285, 301-302 (E.D.N.Y. 2006)("It is well settled in this Circuit that the loss of a business constitutes irreparable harm.")(internal quotation marks omitted). What remains to be determined is whether plaintiff has also established a likelihood of success, or the existence of a sufficiently serious question going to the merits to make the issue a fair ground for trial with a balance of hardship tipping decidedly in Bayit's favor.

Positions of the Parties

Plaintiff maintains that the notice provisions in the 1992 Franchise Agreement are irrelevant for present purposes. Simply put, in Bayit's view "[t]o take the position that paragraph one refers back to paragraph 3.04 doesn't make any sense because 3.04 doesn't refer at all to what we are talking about right now. This is an additional or new term." Tr. at 9-10. And, the argument continues, "the renewal provisions [of §§ 3.03 and 3.04] are clearly intended and clearly are geared toward the renewal term, the things that just happened over the last ten years and not the next five years." Id. at 12. In essence, plaintiff maintains that the language in paragraph 2 of the 2002 Renewal Franchise Agreement, to wit that " . . . the Franchise Agreement and all provisions contained therein shall remain in full force and effect," does not include the 1992 Franchise Agreement's renewal notice provisions. From that, the argument is made that since the 2002 agreement lacks a specific notice provision, notice must simply be given within a reasonable time prior to the otherwise scheduled termination date. And, in that regard, plaintiff posits that the notice of January 10th clearly falls within that ambit.

As a fallback position, plaintiff maintains that should the Court reject its position that it is entitled to injunctive relief simply based on the face of the implicated agreements, at

the very least the Court should find the Renewal Franchise Agreement ambiguous, i.e. in that "a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008). Finally, plaintiff notes that the 2002 Renewal Franchise Agreement was prepared by Tender Loving.

Defendant's position is relatively straightforward. Tender Loving points out that the April 2002 Renewal Franchise Agreement has within its title the word "Renewal" rather than "Amended," thus eviscerating the notion that the 2002 agreement should somehow be divorced from the 1992 Franchise Agreement. Along similar lines, defendant argues that plaintiff's position that the 1992 Franchise Agreement's notice provisions are inapplicable cannot be squared with the second paragraph on the last page of the 2002 Renewal Franchise Agreement, which unequivocally provides precisely to the contrary. In defendant's judgment, the term "all provisions" in the "Franchise Agreement" means just that.

## DISCUSSION

Initially, plaintiff maintained that "[e]ven if the Court finds that Section Three of the Franchise Agreement is binding, Bayit provided sufficient written notice to comply with paragraph 3.04(a)." See Pl.'s Mem. of Law in Supp., TABLE OF

-13-

CONTENTS (this excerpt from the Table of Contents is modified to delete some of the upper case letters that appear in the original). That position was seemingly abandoned during oral argument. In any event, it is clear that the January 10, 2012 letter represents the first notice provided by Bayit, and that such notice was not provided more than 180 days before March 31, 2012. As a result, <u>if</u> it is clear that § 3.04's notice provisions are applicable to plaintiff's efforts to extend the franchise agreement between the parties for an additional five years, plaintiff's proof falls far short the mark.

       The distinction that plaintiff has endeavored to fashion between the "execution of a renewal agreement" which would be subject to § 3.04 on the one hand, tr. at 9, and "an additional or new term," which purportedly would not on the other hand is not persuasive. <u>Id.</u> at 10. Parenthetically, I note that the semantical nuances presently proffered by plaintiff are out of sync with the language contained in the January 10, 2012 notice submitted by Bayit, as well as with the proposed "Second Renewal Franchise Agreement" which accompanied that letter. By way of example, in the proposed "Second Renewal Franchise Agreement" apparently drafted by Bayit and, if not, certainly approved by Bayit as reflected in the January 10, 2012 letter,[2]

---

    [2] Indeed, Bayit's approval of the proposed "Second Renewal Franchise Agreement" is evidenced by the fact that it submitted the document to Tender Loving for execution.

we see the provision that "[e]xcept as provided herein, the terms of the [1992] Franchise Agreement and the [2002] Renewal Franchise Agreement and all provisions contained therein shall remain in full force and effect." Dolan Decl. in Opp'n, Ex. C. That language basically mirrors the language found in the 2002 Renewal Franchise Agreement. Indeed, the only difference between the two documents vis-a-vis their paragraphs "2" is the wholesale inclusion by incorporation in the 2012 proposed Second Renewal Franchise Agreement of not only the terms of the 1992 Franchise Agreement but also of the terms of the 2002 Renewal Franchise Agreement. However, that is a meaningless distinction for present purposes because the notice provisions under discussion are found solely in the 1992 Franchise Agreement. Tellingly absent from the proposed 2012 agreement or accompanying letter is any suggestion that the sought after 5 year extension until 2017 was not a "renewal" of the parties' long standing franchise agreements but rather was an "additional or new" arrangement untethered to the existing notice provisions contained in § 3.04. Tr. at 9-10.

In any event, the portion of the above paragraph beginning with the word "[p]arenthetically" is merely an observation as distinct from a ground for denying the requested relief. The predicate for the Court's decision is to be found elsewhere, viz. from a literal, common sense reading of

paragraphs "1" and "2" of the 2002 Renewal Franchise Agreement. Viewed through that prism, it is abundantly clear that § 3.04(a)'s notice provisions in the 1992 Franchise Agreement are part and parcel of the agreement underlying the present dispute.

I do not doubt that the landscape has changed to some extent in the relationship between the Franchisor and Franchisee over the course of the last two decades. For one thing, it appears the "Franchisor is not currently offering to sell franchises and the Franchisee[s'] current Franchise Agreement[s] . . . contain[] all of the necessary terms and conditions." Mar. 8, 2012 O/T/S/C, Ex. C at 6th "WHEREAS" clause. That change may render some of the provisions in the 1992 Agreement surplusage, such as the requirement in § 3.04(b) that the " . . . Franchisor shall deliver to the Franchisee a copy of its then-current Offering Circular." Id., Ex. A. at § 3.04(b). To the extent that may be true, arguably the parties should have redrafted the 2002 Agreement with respect to the five year extension which is now in litigation. However, the parties did not do so and, as a consequence, the deal they struck in 2002 which is clear on its face, controls. See, e.g., Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 26-27 (2d Cir. 1988)("The parol evidence rule aims to ensure some measure of stability in commercial relations . . . In the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow one party to substitute his view of

-16-

his obligations for those clearly stated.")(internal quotation marks omitted); W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990)("A familiar and imminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.").  And finally, to the extent plaintiff's argument, if accepted, would render paragraph 2 of the 2002 Renewal Franchise Agreement devoid of meaning, not only is such an interpretation  disfavored, see Garza v. Marine Transport Lines Inc., 861 F.2d at 27, but it is also irreconcilable with the unmistakable meaning of the subject agreement.

## CONCLUSION

Plaintiff has not demonstrated that it is entitled to a temporary restraining order or preliminary injunction.  Although Bayit has established that it will suffer an irreparable injury due to the non-issuance of the relief sought given the resulting effect on its business, its proof is inadequate to establish either a likelihood of success on the merits, or a sufficiently serious question going to the merits calling for a trial together with a balancing of the hardships tipping decidedly in its favor.

In sum, the injunctive relief requested in the March 8, 2012 O/T/S/C is denied.

SO ORDERED.

Dated: March 30, 2012
     Central Islip, New York

                                                  ____/s/_____
                                                  DENIS R. HURLEY, U.S.D.J.